# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-1472

DARRICK LAWRENCE,

*Plaintiff-Appellant*,

v.

KENOSHA COUNTY and LOUIS VENA,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 1216—**Rudolph T. Randa**, *Chief Judge.*

———————

ARGUED SEPTEMBER 27, 2004—DECIDED DECEMBER 2, 2004

———————

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* As he attempted to exit the parking lot following a concert, Darrick Lawrence was involved in an altercation with Louis Vena, a Kenosha County police captain. Lawrence claims that he was seized illegally and that Vena used excessive force in removing him from his vehicle. The district court granted summary judgment in favor of Vena and Kenosha County. Lawrence appeals. We find that probable cause did exist for the stop and that Vena acted within the limits of his authority. We therefore affirm the grant of summary judgment.

## I. History

On July 18, 2002, Darrick Lawrence attended a country music concert known as Country Thunder in Twin Lakes, Wisconsin. His girlfriend, Jessica Uccardi, and her young daughter were with him in his SUV as he attempted to leave the event. Kenosha County Sheriff's Department deputies William Peck and Chris Peck (no relation) were present to direct traffic. Captain Louis Vena was called to assist in this task. He wore plain clothes: a gray shirt, khaki pants, and a red baseball-type hat with a silver star patch on the front and the words "Kenosha County Sheriff's Department" embroidered in yellow around the star. Vena wore his full-sized gold badge on his belt as well as an exposed firearm, handcuffs, a magazine carrier, a pager, a cell phone, and a key holder with keys.[1]

The officers decided to direct traffic into two eastbound lanes from the main gate so that cars could turn one way to travel north and the other way to travel south. Vena watched traffic from his squad car and noticed a few cars causing problems by attempting to change lanes. He got out of his car and directed the vehicles safely into their preferred lane. He then noticed a green SUV turning into the path of a compact car. He stopped in front of the SUV and asked the driver, Lawrence, which way he was going. According to Lawrence, Vena pounded on the hood of his SUV to get his attention as he asked this question. Lawrence replied that he was going south and then said, "you don't have to pound on my hood, you ass." Vena then approached the driver's window and told Lawrence that he had not touched his vehicle to make him angry. Lawrence again called Vena an "ass" and said that Vena should not have touched his truck at all.

---

[1] The presence of these items was confirmed by Vena, Deputy W. Peck, and Lawrence's girlfriend, Jessica Uccardi.

Because of Lawrence's irrationally angry behavior, Vena believed that Lawrence might be under the influence of drugs or alcohol. He asked Lawrence for his driver's license in order to determine whether his motor skills were impaired and whether Vena could detect any smell of alcohol. Lawrence yelled, "Who are you to ask for my driver's license?" and refused to give it to Vena. At this point, the SUV was in motion and Vena determined that the vehicle was a threat to other cars and pedestrians. Vena ordered Lawrence to stop the vehicle. When he did not, Vena reached into the vehicle and attempted to put it in park. Because he was unable to do so, Vena opened the door, grabbed Lawrence's left arm, and tried again to stop the vehicle. In his deposition, Lawrence admitted that he was attempting to drive away from Vena.[2] At the time of his affidavit, he said that the vehicle was moving only because his foot had slipped off the brake during the scuffle. It is uncontested, however, that the vehicle was in motion.

As Vena and Lawrence struggled through the open door, Deputy W. Peck, a uniformed officer, approached the vehicle and asked Vena if he needed help. Lawrence testifies that he did not know Vena was a police officer until that point.

---

[2]  This testimony was given by Lawrence in his deposition:

Q   Your car was in gear and you were moving forward at the time that he had hold of your left arm, right?

A   Yes.

Q   At the time he had hold of your left arm, he was reaching in to grab your gear shift, correct?

A   Yes.

Q   And it's at that point you state that you were driving away or trying to drive away or trying to drive to the next available police officer; is that right?

A   Yes.

(Lawrence Dep. at 38.)

Once he recognized that Vena was a police officer, Lawrence claims that he voluntarily exited his vehicle and was cooperative. He claims that Vena retained his hold on Lawrence's left arm and that after Lawrence exited the vehicle, Vena "jerked Lawrence's wrist upward until his wrist was touching his neck." After Lawrence was out of the vehicle, Vena asked Uccardi if she was able to drive the vehicle off to the side of the road. She answered in the affirmative and moved the vehicle. The officers continued to evaluate Lawrence. Lawrence stated that he had not been drinking alcohol and requested a breathalyzer test. Lawrence was questioned about his reaction to Vena's knock on the hood and he stated, "I don't let anybody touch my fucking truck." Lawrence was informed that if he continued to swear, he would be arrested for disorderly conduct. Vena took Lawrence's driver's license to his squad car where he checked for outstanding warrants pursuant to standard operating procedure. Vena then told Lawrence that he would be receiving a citation in the mail for failure to obey an officer's signal.

Lawrence then indicated that he would like to make a complaint against Vena regarding damage to his vehicle. Deputy W. Peck handled the report. Lawrence pointed to two scratches on his driver's side door that were about three inches in length. Lawrence claimed that this damage had been caused by Vena, but he did not claim that there was any damage to the hood of the vehicle.

## II. Analysis

Lawrence argues that he was subject to a Fourth Amendment seizure when he was forcefully removed from his vehicle by Vena and that he was arrested without probable cause. He claims that Vena's suspicion that Lawrence might have been intoxicated was not reasonable. He further contends that Vena used excessive force in making this ar-

rest and caused physical injury to Lawrence's shoulder. Lawrence also claims that Kenosha County is liable because it ratified the acts of its agent, Vena, in its official response to Lawrence's citizen complaint.

Kenosha County and Vena assert that even if Lawrence's version of the facts is accepted as true, his claim does not amount to a constitutional violation. Also, they argue that the § 1983 claims against Kenosha County must be dismissed because Lawrence has not shown any sort of unconstitutional policy or practice. Finally, they maintain that Vena's discretionary actions in performing an investigative stop of Lawrence cannot support a negligence claim because such actions are protected by governmental immunity under Wis. Stat. § 893.80(4).

### A. Standard of Review

When summary judgment is granted below, we review *de novo. See Lamers Dairy Inc. v. United States Dep't of Agric.*, 379 F.3d 466, 472 (7th Cir. 2004); *Indiana Family & Soc. Servs. Admin. v. Thompson*, 286 F.3d 476, 479 (7th Cir. 2002). Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When determining whether a genuine issue of material fact exists, we consider evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In this case, Kenosha County and Vena have the burden of proving that there is not a genuine issue of material fact and that they are entitled to judgment as a matter of law. However, Lawrence retains the burden of producing enough evidence to support a reasonable jury verdict in his favor. *See id.* at 256. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original).

## B.  Vena Had Probable Cause to Seize Lawrence

The facts in this case, taken in the light most favorable to Lawrence, do not amount to a constitutional violation. The Fourth Amendment protects people from unreasonable searches and seizures. A formal arrest is not valid unless there is probable cause. Probable cause exists "if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002). An investigative stop, however, requires only that the officer is able "to produce articulable facts giving rise to a reasonable suspicion that a defendant has been, is, or is about to be engaged in criminal activity." *Smith v. Ball State Univ.*, 295 F.3d 763, 768 (7th Cir. 2002) (internal quotations omitted). An investigative stop becomes a seizure at the point when a reasonable person would feel that he is not free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980). There must also be "an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).

Lawrence was seized when Vena grabbed Lawrence's arm and attempted to physically remove him from his vehicle. A reasonable person, at that point, would have felt that he

was not free to leave.[3] This seizure, however, was not unconstitutional because it was based on probable cause. After Lawrence refused to produce his driver's license, Vena had an objectively reasonable belief that Lawrence had violated a Wisconsin law making it a misdemeanor to knowingly resist or obstruct an officer when he is performing any act in his official capacity and with lawful authority. *See* Wis. Stat. § 946.41. Police officers are permitted under the Fourth Amendment to make warrantless arrests for minor criminal offenses. *See Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). Lawrence's contention that he did not know Vena was a police officer must be taken as true for purposes of this appeal. However, because Vena's badge and weapon were in plain sight on his belt and he was wearing a Sheriff's Department hat, it was reasonable for Vena to think that Lawrence knew he was a police officer. Therefore, a reasonable police officer would believe that Lawrence knowingly violated the officer's lawful order to produce his license. Probable cause existed and, thus, the seizure was not a constitutional violation.

## C. The Amount of Force Applied by Vena Was Reasonable Under the Circumstances

Now we must consider whether Vena applied excessive force in his lawful seizure of Lawrence. The Supreme Court has made it very clear that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

---

[3] Lawrence argues that he was unaware that Vena was a police officer. Therefore, the seizure did not occur until Deputy W. Peck approached the vehicle and asked Vena if he needed assistance. It was then that Lawrence realized that he was arguing with a police officer and would not have felt that he was free to leave.

'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). In determining whether a particular seizure was reasonable, a court should carefully consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The officer's behavior will be "evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). The assessment of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The facts here, according to Lawrence, are that Vena grabbed his left arm and attempted to pull him out of his vehicle. Then after he got out of the vehicle, Vena pulled Lawrence's wrist behind him and up to his neck. Lawrence contends that this action caused injury to his rotator cuff.[4]

Accepting Lawrence's accusations as true, the amount of force used by Vena was not excessive. Lawrence refused to produce his driver's license when Vena requested it. He was combative and irrationally angry. The fact that his vehicle was in motion as he argued with Vena could lead a reasonable officer to believe that he was attempting to evade arrest. Vena could also have reasonably believed that Lawrence was posing a danger to pedestrians and stopped traffic in the area. "To say that police officers have acted within the bounds that the Constitution sets is not neces-

---

[4] It should be noted that Lawrence's doctor was unable to confirm that Lawrence's shoulder pain was caused by anything that might have occurred in the altercation with Vena.

sarily to say that they have acted wisely." *Bell v. Irwin*, 321 F.3d 637, 641 (7th Cir. 2003). But a police officer's ability to make a stop or an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The force used in making the seizure was not excessive.

### D. Kenosha County Is Not Liable

A government entity is responsible under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). A municipality cannot be held liable solely on the grounds of respondeat superior. *Id.* at 691. This court summarized relevant Supreme Court cases on the issue and found there to be three ways in which a municipality can be held liable under § 1983. There must be: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the constitutional injury. *See Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (superceded by statute on unrelated point) (citations omitted).

Lawrence points to a letter that he received from Sheriff Larry Zarletti in response to his citizen's complaint as proof that the county "ratified and approved" Vena's actions. The letter states that "[w]e find Captain Vena was identified appropriately with what we [sic] was wearing and acted within proper authority to ask for your identification and to stop your vehicle from moving and pursue the action he did to remove you from the vehicle when you were not willing

to cooperate." This letter was simply a response to a citizen's complaint. It clearly does nothing to prove that the county had an express policy or widespread practice which condones the use of excessive force on people who refuse to present their driver's licenses. Lawrence has neither alleged, nor presented, any evidence that would provide a basis for holding Kenosha County liable under § 1983.

### E.  Lawrence's State Law Claim Is Barred

Lawrence asserts a state law negligence claim. Kenosha County and Vena correctly argue, however, that his claim is barred by the governmental immunity afforded by Wis. Stat. § 893.80(4). Lawrence does not address this argument in his complaint or his appellate brief. The district court's decision to retain jurisdiction under 28 U.S.C. § 1367 and to dismiss Lawrence's state law claims with prejudice was appropriate.

### III.  Conclusion

Vena had probable cause to seize Lawrence and the force that he used to effectuate the seizure was not excessive under the objective test used to evaluate Fourth Amendment claims. Lawrence was unable to prove any policy or practice that would lead to liability for Kenosha County. Governmental immunity defeats Lawrence's state law negligence claim. We AFFIRM the district court's grant of summary judgment.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*