In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1517

GEORGE H. DAWSON,

*Plaintiff-Appellant*,

*v.*

MICHAEL BROWN, Springfield Illinois
Police Department,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:12-cv-03330-RM-TSH — **Richard Mills**, *Judge.*

ARGUED SEPTEMBER 11, 2015 — DECIDED OCTOBER 7, 2015

Before BAUER, WILLIAMS, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, George H. Dawson ("Dawson"), filed a six-count complaint that included, among other claims, a civil rights action pursuant to 42 U.S.C. § 1983 against Officers Michael Brown and Chance Warnisher of the Springfield Police Department for use of excessive force. The district court granted summary judgment in favor of the defendants on all six counts. On appeal, Dawson only chal-

lenges the district court's grant of summary judgment in favor of Officer Brown on the excessive force claim. For the reasons that follow, we affirm.

## I. BACKGROUND

On the evening of December 14, 2011, Officer Steve Stirmell of the Jerome Police Department observed a white pickup truck speeding on Iles Avenue. Officer Stirmell followed the truck and activated his sirens. The driver of the truck, Greg Dawson ("Greg"), ignored the sirens and continued driving. As a result, Officer Stirmell radioed for assistance. Around 10:28 p.m., Officer Brown of the Springfield Police Department received a dispatch regarding Greg's vehicle fleeing from Officer Stirmell. Officer Warnisher of the Springfield Police Department also received a dispatch regarding the pursuit. Both officers responded to assist Officer Stirmell.

Eventually, Greg drove to his father's house on Lowell Avenue in Springfield, Illinois. Dawson is Greg's father. When Greg arrived at the house, he ran from his truck and jumped the fence into his father's backyard. At this point, Officer Stirmell ceased pursuit and began searching Greg's truck. Shortly thereafter, Officers Brown and Warnisher, as well as four or five other officers, arrived at the house. Several officers, including Officer Warnisher, then searched the backyard to locate Greg. The officers knew Greg had refused to stop for Officer Stirmell, but were also under the mistaken impression that Greg had an outstanding arrest warrant for involvement with dangerous drugs.[1]

---

[1] The officers had confused him with a different Greg Dawson.

Sometime after the officers arrived, Dawson (who had been asleep in his home) received a call from his neighbor that police were in his yard. Dawson went out and saw several officers standing outside his front door. The officers asked Dawson whether he knew where Greg was, to which he replied he did not. Dawson stepped out of his house and sat on the front stoop. Dawson's front stoop faced out towards Lowell Avenue, while his driveway was parallel to his stoop and ran along the side of his house and led into a detached garage in the back. At an officer's request, Dawson called Greg's cell phone to locate him, but Greg did not answer. Dawson remained outside and answered the officers' other questions. He informed them that he was 72 years old, and that his son had no involvement in drug dealing. While Dawson was speaking with the police from his front stoop, Greg re-appeared down the street running towards the side door of Dawson's house that faced the driveway.

At this point, the depositions of Dawson, Officer Brown, Officer Stirmell, and Officer Warnisher differ on the exact details of what occurred.

According to Dawson's deposition testimony, after he saw Greg run towards the side door of the house, he got up from the front stoop and went around the corner of the house. Once he rounded the corner, he observed Officer Warnisher and possibly another officer attempting to arrest Greg on the driveway outside the side door of the house; Greg was physically resisting arrest. During the struggle, Dawson observed Officer Warnisher use his taser on Greg. Since Greg continued to resist arrest, Dawson believed Officer Warnisher was going to deploy it on Greg a second time. As a result,

Dawson walked up to Officer Warnisher and "showed [his] hands" to indicate he did not have any weapons. As he approached, he stated, "Please don't kill him." Dawson came within three or four feet of Officer Warnisher, who was still attempting to subdue Greg. Officer Warnisher then kicked Dawson in his side. This caused Dawson to stumble back a few feet, but he did not fall. Rather, he testified that he "snapped right back," however, he was then "immediately" tackled from behind by Officer Brown. Dawson testified this occurred within "a second" after he was kicked.

According to Officer Brown's deposition testimony, he was searching through the neighbor's yard when Greg re-appeared running towards the side of the house. Officer Brown rounded the corner of the neighbor's house and ran up Dawson's driveway. As he ran up the driveway, he observed Greg on the ground while Officers Warnisher and Stirmell struggled to handcuff him. During the struggle, Officer Brown observed Dawson approaching Officer Warnisher with his arms extended and exclaiming, "That's my son." Officer Brown told Dawson to "get back" and pushed him away, causing Dawson to trip and fall onto the driveway. According to Officer Brown, the entire time between when he rounded the corner to when he pushed Dawson was between two to three seconds. In addition, Officer Brown testified that he did not see Officer Warnisher kick Dawson.

According to Officer Stirmell's deposition testimony, he heard yelling near the side of the house and ran to the scene. There, he saw Officer Warnisher struggling with Greg. Officer Stirmell assisted by grabbing Greg's legs and tackling him to the ground. Thereafter, Officer Brown arrived and used his

taser to subdue Greg. Immediately after Greg was tased, Dawson approached Officer Stirmell from behind, placed his hand on Officer Stirmell's shoulder and stated, "Leave my son alone, leave my son alone, don't hurt him." Officer Stirmell testified that he was aware that Officer Brown took action to get Dawson away from Officer Stirmell, but he did not see what occurred.

According to Officer Warnisher's deposition testimony, he and another officer with a canine unit were searching Dawson's backyard for Greg. The canine unit quickly located Greg, who then ran from the officers and into several of his neighbors' backyards. Officer Warnisher pursued him on foot. After running through several yards, Greg eventually turned around and began running back towards Dawson's house. As he ran back, he jumped over the fence surrounding Dawson's backyard. While he was going over the fence, Officer Warnisher deployed his taser on Greg. However, this was ineffective; Greg made it over the fence and continued fleeing. Officer Warnisher jumped the fence as well and pursued Greg as he ran towards Dawson's house. Once Greg reached the side of Dawson's house, he opened the side door, but Officer Warnisher grabbed him in a bear hug before he could enter. As Officer Warnisher held Greg, Dawson appeared and shouted, "Let go of my son." Officer Warnisher turned so that he was in between Greg and Dawson. Once Dawson came within three or four feet, Officer Warnisher yelled, "Get back," and kicked Dawson in his torso. After Officer Warnisher kicked Dawson, Officer Stirmell arrived to help wrestle Greg to the ground. As the two officers struggled to handcuff Greg, Officer Warnisher heard Officer Brown warn Dawson to step back. Over his

shoulder, Officer Warnisher saw Dawson standing as Officer Brown pushed him away. According to Officer Warnisher, the entire incident from his initial contact with Greg to when both Greg and Dawson were in custody lasted between ten to twenty seconds.

Following this incident, Dawson was handcuffed and arrested for resisting arrest and obstruction. However, he was never formally charged. After his arrest, he was driven to the police station, where he posted bond. Afterwards, his daughter took him to the emergency room to treat the injuries he sustained.

On December 3, 2012, Dawson filed a six-count complaint in the United States District Court for the Central District of Illinois. Count I was a § 1983 claim against Officer Warnisher for use of excessive force. Count II was an assault and battery claim against Officer Warnisher. Count III was a § 1983 claim against Officer Brown for use of excessive force. Count IV was an assault and battery claim against Officer Brown. Count V was a § 1983 claim against Officer Stirmell for failure to intervene. Count VI was a § 1983 claim against Officers Warnisher, Brown, and Stirmell for conspiracy to interfere with Dawson's civil rights. Officers Warnisher and Brown moved for summary judgment on Counts I–IV and VI, which was granted. Officer Stirmell moved for summary judgment for the claims asserted against him in a separate proceeding, which was also granted.

## II. DISCUSSION

On appeal, Dawson challenges whether it was proper for the district court to grant summary judgment in favor of

Officer Brown regarding the excessive force issue. Specifically, Dawson argues that the district court improperly resolved disputed issues of material fact, failed to construe the facts in the light most favorable to Dawson, and that Officer Brown was not entitled to qualified immunity.

We review the district court's grant of summary judgment *de novo* and construe all facts as well as all reasonable inferences in the light most favorable to the non-moving party. *See Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013). However, "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Id.* (citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "[t]he mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *See Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004) (emphasis in original). A genuine dispute to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). Material facts are those that "'might affect the outcome of the suit' under applicable substantive law." *Id.* (citation omitted).

Excessive force claims are reviewed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether a police officer used excessive force is analyzed from the perspective of a

reasonable officer under the circumstances, rather than examining the officer's actions in hindsight. *Id.* at 396 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment.") (citation omitted). The court addresses several factors to determine the reasonableness of an officer's actions under the circumstances, including the severity of the crime; whether the suspect posed an immediate threat to the officers or others; whether the suspect was resisting or evading arrest; whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties. *See Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011) (citation omitted). However, the court's ultimate goal in examining these factors is to determine "whether the force used to seize the suspect was excessive in relation to the danger he posed … if left unattended." *Id.* (citation omitted). Finally, if there are sufficient undisputed material facts to establish that the officer acted reasonably under the circumstances, then the court must resolve the issue as a matter of law, rather than allow a jury to "second-guess" the officer's actions. *See Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

Here, the undisputed material facts viewed in the light most favorable to Dawson establish that Dawson's son Greg was evading arrest. After Greg ran towards the side door of the house, Officer Warnisher grabbed him to prevent his escape. However, Greg continued to physically resist arrest. Officer Warnisher used his taser on Greg at least once, but it was ineffective. At some point during this struggle, Dawson approached Officer Warnisher while he was still trying to

subdue Greg. Dawson showed his hands as he approached Officer Warnisher and exclaimed, "Please don't kill him." He came within three or four feet of Officer Warnisher, who then kicked him away.

In addition, it is undisputed that Officer Brown tackled Dawson into the driveway. According to Dawson, this tackle occurred "immediately" after he was kicked back by Officer Warnisher. According to Officer Brown, it was as Dawson was approaching Officer Warnisher. According to Officer Stirmell, it was after Dawson approached and put his hand on Officer Stirmell's shoulder. According to Officer Warnisher, it was after he kicked Dawson and while he and Officer Stirmell were trying to subdue Greg. Although the parties disagree on the exact timeline of the events, it is clear that the entire incident lasted mere seconds. Thus, it is a reasonable inference that Officer Brown tackled Dawson either as Dawson was approaching Officer Warnisher, or seconds after Dawson had approached Officer Warnisher.

This factual dispute, however, does not create a genuine issue of material fact because under any view it was reasonable for Officer Brown to believe that Dawson was attempting to interfere with a lawful arrest. Dawson's testimony acknowledges that he approached Officer Warnisher as Officer Warnisher struggled to arrest a suspect who had previously evaded capture and was still physically resisting arrest. Officer Warnisher was in a dangerous position due to his inability to subdue a non-compliant suspect. Dawson came within three to four feet of Officer Warnisher while he was in this dangerous situation. In addition, Dawson communicated that he was afraid Officer Warnisher was going to kill his son. As the

district court properly found, a reasonable officer under these circumstances could reasonably believe it was necessary to tackle Dawson to protect Officer Warnisher from Dawson's interference with a lawful arrest. *See Smith v. Ball State University*, 295 F.3d 763, 770 (7th Cir. 2002) ("When police officers face what is essentially a fluid situation, they are entitled to graduate their response to meet the demands of the circumstances confronting them.") (citation omitted).

Dawson argues that the district court improperly resolved disputed issues of material fact and failed to view the facts in the light most favorable to Dawson. Specifically, Dawson combines Officer Brown's testimony that Officer Brown *did not see* Officer Warnisher kick Dawson, with Dawson's testimony that Officer Brown tackled him *immediately after* Officer Warnisher kicked him. Under this combination, Dawson claims that the district court should have assumed Officer Brown did not observe Dawson approach Officer Warnisher or hear Dawson state anything to Officer Warnisher. Dawson supports this claim by arguing that according to Dawson's testimony, he approached Officer Warnisher and stated, "Please don't kill him" *before* he was kicked; while Officer Brown testified that he did not see Officer Warnisher kick Dawson. Therefore, Dawson believes the court should assume that Officer Brown did not arrive until *after* Dawson was kicked. Thus, under Dawson's analysis, the district court could only view the evidence in the light most favorable to Dawson by assuming that when Officer Brown rounded the corner he only saw Dawson straightening himself up as he stood six to seven feet away from Officers Warnisher and Stirmell, who were struggling to arrest Greg. Further, under Dawson's view, the district

court should have assumed Officer Brown then immediately tackled Dawson to the ground without any knowledge of Dawson's prior interaction with Officer Warnisher that occurred seconds earlier.

Although we must view the evidence in the light most favorable to Dawson, he is only entitled to *reasonable* inferences from the facts presented, not those only supported by speculation or conjecture. *See Fitzgerald*, 707 F.3d at 730 (emphasis added). If the court accepted Dawson's testimony that he was tackled "immediately" after he was kicked by Officer Warnisher, then no reasonable juror could find that Officer Brown was unaware that Dawson had just approached the officers struggling to arrest Greg. However, if the court rejected Dawson's testimony, then the only other evidence a reasonable juror could rely upon comes from the officers' testimony. According to the officers, the tackle occurred either as Dawson was approaching Officer Warnisher, when Dawson placed his hand on Officer Stirmell, or as Dawson stood over Officer Warnisher's shoulder while he struggled to arrest Greg. In any of these scenarios, the force used was constitutional because a reasonable officer could have reasonably believed that Dawson was interfering with a lawful arrest. Thus, even with the facts and inferences viewed in his favor, Dawson fails to establish a coherent narrative from the testimony presented that is sufficient to withstand summary judgment.

Therefore, we hold that Officer Brown did not use excessive force, but rather acted as a reasonable officer under the circumstances. Also, since Officer Brown did not violate Dawson's Fourth Amendment rights, it is unnecessary to address whether he was entitled to qualified immunity. As a

result, the district court did not err in granting summary judgment in favor of Officer Brown.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.