NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 16, 2021
Decided November 29, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-1742

| | |
|---|---|
| TRINIA JONES, as Independent Administrator of the Estate of TREVON JOHNSON, dec'd., *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 17-cv-1076 |
| SCOTT KUSCHELL, *Defendant-Appellant*. | Joan B. Gottschall, *Judge*. |

**ORDER**

Scott Kuschell, a DuPage County Sheriff's Deputy, shot and killed seventeen-year-old Trevon Johnson in his home when responding to a 911 call about a domestic disturbance. Johnson's estate (administered by his mother) sued Kuschell and the county, claiming constitutional violations and state law torts. Kuschell moved for summary judgment based on qualified immunity, and the district court concluded that factual disputes precluded a ruling in his favor. Kuschell filed this interlocutory appeal.

Kuschell's first burden is to establish that we may hear his appeal pursuant to the collateral order doctrine, an exception to the usual rule that the court has jurisdiction over "final decisions" of the district court, allowing for review of "decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995). In the case of qualified immunity, that requires him to demonstrate that the appeal presents a pure question of law. *See Smith v. Finkley*, 10 F.4th 725, 735 (7th Cir. 2021). But the two sides present very different stories about the moments before the shooting, each supported by record evidence. Because numerous facts remain in dispute, we must dismiss the appeal for lack of appellate jurisdiction. *See id.* at 736.

The factual record is limited to that evidence submitted in support of, and in opposition to, the summary judgment motion, construed in the estate's favor. *Id.* at 730. That does not include any body-camera or other video footage of the shooting or the events leading up to it, and expert analysis of the forensic record was not complete at the time of the motion. Therefore, witness testimony is the primary source of evidence about the shooting at this stage.

## Background

On January 1, 2017, Kuschell received a dispatch about a domestic incident between Johnson and his sister, Ricquia. The dispatcher informed Kuschell that a six-foot, six-inch, black male was threatening a pregnant woman with a knife and possibly attempting to get a gun.

Kuschell arrived at the scene without the sirens or emergency lights of his squad car activated. As Kuschell exited his vehicle, he heard what he believed to be breaking glass, and he drew his weapon. Kuschell approached Johnson's home, and the door suddenly swung open. There stood a black male between 60 and 65 years old—later identified as Johnson's grandfather. Kuschell asked if he was Johnson, and the man responded: "[H]e's upstairs." Kuschell asked if "he" referred to Johnson and if Johnson had a knife, and the man responded, "Yes."

Kuschell took a position just inside the door and at the base of an unlit stairway to the second floor with his service weapon drawn and pointed downward. Johnson's sister, Ricquia, who was just inside the home on the first floor, told Kuschell that Johnson had hurt her and showed the deputy her head and a braid of hair on the floor. Kuschell asked Ricquia if Johnson "was upstairs … and does he have a knife?" to which

she responded, "He's upstairs, yes." Ricquia testified that she clarified that Johnson was unarmed. Kuschell yelled up the stairs to Johnson requesting that he come down.

Johnson's brother, Robert, appeared first at the top of the stairs. Kuschell testified that he asked Robert if he was Johnson and, when Ricquia said that he was not, Kuschell instructed him to come down the stairs. During the encounter, Kuschell kept his weapon drawn and pointed downward. Kuschell testified that he asked, "Is [Johnson] upstairs with a knife?" and Robert responded, "Yes." Robert, meanwhile, testified that Kuschell never said a word to him.

Johnson began descending the stairs immediately after his brother. Here, the parties' versions of events diverge. Kuschell's account—supported solely by his own testimony—is that he heard a loud bang, followed by the sound of someone running, coupled with a "guttural growl," which Kuschell likened to "the sound of someone about to tackle someone." Kuschell attests that Johnson charged at him while holding what appeared to be a knife and making a throwing motion, causing him to believe Johnson was attempting to attack him. According to Kuschell, an object passed over his shoulder and struck the wall behind him, at which point he opened fire, striking Johnson five times.

Johnson's estate, relying on the testimony of his family members, describes Johnson as proceeding down the stairs with his hands in the air when he was shot. With Johnson and Ricquia being separated on different floors, the disturbance had calmed. And Johnson's grandmother—who was with Johnson upstairs—yelled to Kuschell that she was sending Johnson downstairs and his hands would be up. Johnson's mother (at the top of the stairs) and Ricquia (on the first floor) testified that Johnson began descending the stairs, holding his empty hands in the air with his palms facing forward, complying with Kuschell's instructions. When Johnson saw Kuschell's gun, he turned, slipped, and fell backward; he did not jump toward, lunge at, or threaten Kuschell. Kuschell discharged his weapon. A broken trophy was found near where Kuschell was standing, but no knife was recovered from Johnson's body or nearby. According to Johnson's grandfather, Johnson knocked over the trophy when he was shot, and it rolled to the bottom of the stairs.

Johnson's mother, individually and on behalf of Johnson's estate, sued the DuPage County Sheriff's Office and Kuschell. Pertinent to this appeal is the claim under 42 U.S.C. § 1983, alleging that Kuschell violated Johnson's Fourth Amendment rights by using excessive force to seize him. Kuschell moved for summary judgment, arguing that he is entitled to qualified immunity.

The district court denied Kuschell's motion, finding that genuine issues of fact remained. It reasoned that under clearly established law, an officer cannot "seize an unarmed, nondangerous suspect by shooting him dead." Further, the court concluded, a reasonable fact finder could find that the undisputedly unarmed Johnson—a fact relayed to Kuschell by Ricquia—was complying with Kuschell's command to come downstairs, had his hands up, and did not lunge at Kuschell.

## Analysis

Kuschell asks us to reverse the district court's decision and hold that qualified immunity protects him from suit. Qualified immunity bars a civil claim for damages against a government official whose actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Neither Kuschell nor the estate engage with the predicate question of whether we have appellate jurisdiction over this interlocutory appeal under the collateral order doctrine. Admittedly, that question overlaps with the merits, but we must address our jurisdiction first. *Smith*, 10 F.4th at 734.

In certain cases, we can hear an interlocutory appeal of a decision denying summary judgment based on qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). But we can do so only when there are no genuinely disputed factual issues. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011). Therefore, we must determine whether Kuschell's arguments for qualified immunity require the resolution of factual disputes with respect to either prong of the qualified immunity defense: whether a constitutional right was violated and whether that right was clearly established. *Smith*, 10 F.4th at 738, 742. And even if there are unresolved factual issues, appellate review is possible if "the officer seeking immunity is willing to take the factual issues off the table and accept (for purposes of the qualified immunity motion) the factual account plaintiff has presented." *Est. of Davis v. Ortiz*, 987 F.3d 635, 639 (7th Cir. 2021).

Kuschell has not done that. Indeed, at times he asks us to accept *his* version of events. He maintains that "notwithstanding Plaintiff-Appellee's version of events," whether a reasonable officer would have found Johnson imminently dangerous is at least debatable. But we cannot simply disregard the estate's version of events.

The first step of the jurisdictional inquiry asks whether it can be determined as a matter of law that Kuschell did not violate the Fourth Amendment protection against unreasonable seizure. This depends on whether the totality of the circumstances justified the use of deadly force in effectuating the seizure. *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985). Courts view the circumstances from the perspective of a reasonable officer

and address several factors. Whether force is justifiable depends on if an individual is suspected of committing a crime, poses an immediate threat to officers (including whether the person was armed), and is actively resisting or evading arrest. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

We cannot determine as a matter of law that Kuschell acted reasonably because too many relevant facts are in dispute. If a jury accepted the estate's evidence, it could conclude that the use of deadly force was unjustified. Certainly, a reasonable officer in Kuschell's situation could have believed based on the dispatch report that Johnson had committed a battery and was dangerous: he had a knife and had been violent with a pregnant woman—his sister—who thought he might kill her.

But an officer's objectively reasonable belief that he was walking into a dangerous situation cannot survive indefinitely as the situation evolves. *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993). Kuschell entered the house on the first floor knowing (from the grandfather) that Johnson was on another floor. Ricquia testified that she told Kuschell after he arrived that Johnson was upstairs and unarmed. Multiple witnesses swear that after Kuschell demanded that Johnson come down, Johnson did so holding his empty hands above his head in compliance with Kuschell's request. Crediting this version of events, a jury could find that a reasonable officer would not have viewed Johnson, unarmed and complying with the officer's commands, to be an immediate threat to the officer or others present. Courts have found that police may not reasonably use deadly force against even an *armed* suspect who is complying with officers' instructions. *See Mason-Funk v. City of Neenah*, 895 F.3d 504, 509 (7th Cir. 2018) (collecting circuit court cases); *cf. Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (concluding qualified immunity protected officer who shot a woman armed with a knife because she failed to acknowledge officers' commands). And Kuschell acknowledges that the estate cites admissible evidence to support its assertion that Johnson was complying with Kuschell's orders.

In his reply brief, Kuschell finally engages with the law from the standpoint of the estate's evidence, and he insists that, even accepting that version, a reasonable officer would have felt under immediate threat when Johnson tripped. Kuschell claims that the stumble could have appeared more like a charge at the officer. We confronted a similar situation in *Smith v. Finkley*. The appeal was dismissed because, while evidence showed that Smith moved towards the officers that shot him, it was unclear whether a reasonable officer would have construed the movement as threatening. *Smith*, 10 F.4th at 739–42. An unexpected movement does not justify the use of deadly force as a matter of law, even if it might in a particular situation. If Johnson was complying with

instructions and had his hands up, as a jury could find, force was not necessarily justified when he tripped, especially when Johnson's relatives maintain that he fell backward and did not appear to lunge at Kuschell.

We must also consider whether the constitutional right that Kuschell allegedly violated was clearly established. If it was not, then Kuschell is entitled to qualified immunity irrespective of any violation. Regarding the use of deadly force, it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11. Every circuit has recognized this right, placing it beyond dispute. *See, e.g.*, *Strand v. Minchuck*, 910 F.3d 909, 915 (7th Cir. 2018). The question is whether the right's contours were sufficiently drawn to encompass the facts at issue here. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The Supreme Court has insisted that courts not define a constitutional right at too high a level of generality. *See, e.g.*, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Kisela*, 138 S. Ct. at 1152.

Seizing on that principle, Kuschell argues that *Garner* is too generalized to apply here. He says that based on the testimony available "no one can say with any certainty that Trevon Johnson was 'clearly' in the process of surrendering." But that is exactly what the estate's evidence suggests. And *Garner* specifically found that the shooting of an unarmed suspect who did not appear to pose a threat was unreasonable. 471 U.S. at 11. We have recognized that precedent in this area has been settled since at least 2015: "it is unreasonable to use deadly force against a suspect who is not resisting arrest and who is genuinely attempting to surrender." *Gant v. Hartman*, 924 F.3d 445, 451 (7th Cir. 2019). Thus, the prohibition against using deadly force to subdue a nonresisting suspect was settled before the events giving rise to this suit.

Of course, in this case, we do not know whether there was a nonresisting suspect. If Kuschell's account of a charging Johnson is accepted, then the case would perhaps fall outside of *Garner's* and *Gant's* scope, and he might be entitled to qualified immunity. But if Johnson was surrendering with his hands up when he was shot, as the estate's evidence suggests, then their dictates would seemingly apply. It is, again, not our place to resolve that dispute.

Because there is a genuine factual dispute over whether the unarmed Johnson was complying with Kuschell's orders, this appeal cannot be resolved solely as a matter of law. Therefore, the collateral order doctrine does not apply, we lack appellate jurisdiction, and the appeal is DISMISSED.